Good morning, may it please the court. My name is Ira Lipsius and I represent Claredon National Insurance Company in this matter. I think we really come down to two issues before this court. One is the interpretation of California statute... Brown, do you want to start the clock? You want me to go on forever? Yes, exactly. Okay. One is the interpretation of California statute 11-580.1 and whether the state farm exclusion is valid under 11-580.1. And I'll go into that first unless the court prefers otherwise. Okay. I think we have to look carefully at the statute. I really had trouble seeing why this wasn't just a simple exclusion applicable to the case. As long as they're not using the bus or van or whatever it is to take passengers for hire, it's covered. When they are, it's not. And here, and someone who borrows it gets the same policy coverage under the, I think they call it the Omnibus Clause. And the company that borrowed it was using it to take its paying passengers around, even though they don't pay separately for this part of the trip. I don't get what's complicated. We get into the second issue of whether this was for a charge, but let's get into that issue. It really comes down to the METS case, Supreme Court case in California, where the METS court said you can have an exclusion in a policy, you can exclude a class of vehicle, you can't exclude a specific operation of a vehicle. And then there are the other cases from METS. And basically what they said in the METS case. I remember thinking it was distinguishable. Let's see. That fellow had leased his car, and he had a liability policy that excluded cars while rented to others. Correct. And the court felt in METS. I'm sorry. But that's not the problem here. Well, this is no different. It says here there's two exclusions. The van wasn't rented to others. Okay. But the nature of the exclusions not permissible under METS are those policies that exclude an activity. I'm not sure that it's that broad. I think it may just be saying you have to have an Omnibus Clause. That's not what METS said. METS, whether we agree with METS or not, METS is very broad. Let's look at it. It was a little surprising, but let's see. The exclusion covered cars while rented to others. Rented or leased. Attempted to exclude a class of permissive users. So it conflicted with 11-580.1. Correct. Permissive user coverage, that's the omnibus coverage I was talking about. And here there's no question that the, I can't remember their name, the company that was borrowing the van and driving it was a permissive user. But that wasn't why they weren't covered. The reason they weren't covered is that they're driving around passengers for hire. If they had been just using that van to pick up some paper cups and bags of peanuts to hand to the people in the van, then they would have been covered. But likewise in METS, it was only while rented to others. If these same people had been using the vehicle and they hadn't rented it out to those people, but they were just using it and borrowing it, they would have been covered. As long as they're not taking passengers for hire, they're a permissive user and they're covered. So had he been using the van for personal errands and to drop his clothes off at the dry cleaners and got involved in an accident, then there would be coverage, would there not? There would be. And that's the same thing with METS. Let's take the rented car, the other one alone. That is METS. That is METS. Mr. Lipschitz, you made the same argument to Judge Morrow, and I'm looking at her opinion in the excerpts of Record 26, which is page 13 of the court's opinion. And she saw the distinguishing feature the same way that I do, which is that there's a difference between the status of the driver versus the use of the vehicle. And the problem you've got is that at the time this injury occurred, the vehicle was being used to carry passengers for hire. But in METS, they looked at it the same way. They took other exclusions. Loan to customers was held invalid in Republican indemnity. It said you look at what's happening at the time. I see METS, though, and maybe you can help me with my reading of METS, but I see METS the same way Judge Morrow did, and that is that what we're doing is looking at the status of who's operating the vehicle. All right? That's not what METS said because it comes down to that, but that was not the exclusion in METS. Let's take the first exclusion here in this policy, while rented or leased to others.  So you're now looking at the status of the vehicle. You're not looking at who's driving it the same way we're not looking at who's driving it here. It's while it's a rented vehicle or in Republican indemnity, while loaned to person. If I loaned it. Exclusion may not be worded to exclude coverage for permissive users. So the driver here was clearly a permissive user within the meaning of METS. And if the accident had occurred, if he'd run into somebody while he was dropping the clothing off, then under METS he would have been covered. But he got into difficulty here because he converted the use of the vehicle from personal errands to carrying passengers for a hire. I mean, METS, they converted it to be rented to others. That is, if you look at the court report. I don't actually see why they're even related. For example, you have a liability policy. You're covered driving your car that's listed in the policy. No problem at all. You carpool and your carpool buddies share the gas expense. You're still covered because there's an exception to the exclusion. And then you decide that instead of carpooling, I'm just going to stop at the corner where people are waiting for the bus and ask if any of them want to pay $10 for a ride into town. You're not covered when you drive them into town for $10. It has nothing to do with the permissive user clause. Now, transportation connection was covered. Under the statute, the policy had to cover permissive users. It did. They were a permissive user. They're covered. That takes care of METS. METS comes, goes, it's fully satisfied because transportation connection is covered. The only problem comes when and if they carry passengers for hire. They're still covered except for while they're carrying passengers for hire. The while clause takes them out during that use of the otherwise covered vehicle. So METS has directly addressed that, and I'll quote from METS if the Court would like one. Okay, what page? I'm looking at it. Okay, METS 513 Pacific 2nd 927. Okay. And paragraph that begins, the exclusion of automobiles while rented to others in the instant case parallels the exclusion of loan to customers held in value in the Republic Indemnity case. In Republic Indemnity, I'm sorry. In both cases, this policy spoke superficially of excluding only a class of automobiles, which is exactly what we're talking about here. Superficially, it looks like we're only excluding a class of automobiles, meaning that that's being used while someone is paying to use the carrier person for charge. But in both cases, the definitive characteristic of the excluded class of vehicles lies in the fact that they are being operated by a class of permissive users. Hence, in practical effect, the exclusion denies coverage to this class of permissive users. My initial look at that is that it says nothing that helps you. What am I missing? Okay. The Court – well, let's look at METS. Well, there is an exclusion in the policy that says, well, it's rented or leased to others. That's not the exclusion that was relied upon. That's correct. But what is the concept of METS? And it's a difficult concept to understand. Why should a vehicle be excluded under the statute if it's rented to someone? Why is that an exclusion of permissive users? Let's take the simple case. I rent my car to you. And then I'm driving it because I'm paying – you pay rent, and I'm driving my own car. So therefore, no coverage while vehicle rent, and it's not excluding permissive users. But that's what METS says. In effect, I'm excluding permissive users. And what is the difference if it's rented to others, if it's used to carry persons for a charge? It's the spigot effect. That's what METS says. I'm not – I don't think you can read METS that far. I think what METS is saying is that, going back to my status of the driver, that's the distinguishing feature, but that is perfectly acceptable, and I would think commercially reasonable for an insurance company to say, look, it's one thing to underwrite a risk for somebody who is using the vehicle to run personal errands. It's an entirely different risk to accept the responsibility of carrying people for hire. But it's also a different risk to ensure someone is running a rental car operation on a personal automobile. That's what METS said. Do you get the idea you're not getting this fire started on this issue? I believe I'm having a hard time with this point at this point. You might want to go to the next issue. Okay, very good. I will, Your Honors. But I believe a careful reading of METS is the idea of a spigot. We understand your argument. You're not buying it. Well, I mean, we'll look at it again with that argument in mind. Okay. Now the other issue comes, and that is there are cases in other jurisdictions, and there's very old cases in Florida and California. Sorry about that. I could have said Michigan. That would really get us confused. One place New Yorkers go, we could just pass. Well, I'm not a New Yorker by birth, but that's the place. Anyway, the other question is, and I think it's just looking at the exclusion itself, and I think it says used to carry persons for a charge. This is part of a big operation, and there are cases in California. I cited them, and I could go over them here for the court and repeat them, but they are in the brief where they said there has to be a specific charge for use of the vehicle. They pay for this grand tour, and it wasn't the bus that was taking them on the tour. This was a pickup. This was not used technically, and we have to look at language very narrowly, because there's an exclusion. Any possible interpretation that's a valid interpretation, not even an ambiguity, if there are two valid interpretations, one expanding coverage, one limiting coverage, the court has to look to the expanding coverage. If you would ask a lay person. Suppose that you were to prevail on this. Does this mean that we would have a jury trial on whether the passengers paid for the pickup or whether the pickup was free? They've admitted, if you look in their statement of facts from State Farm, they've admitted that there was no extra charge for this. No, it's a little ambiguous, and I think that's what you've got going for you, is that it's a little ambiguous. But what I'm trying to plumb here is, is it a genuine issue of fact, or is it just a somewhat more difficult-to-resolve issue of law? If it's an issue of fact, then you would have a jury decide whether it was a free pickup or whether it was pickup for a charge because it was embraced within the general tour charge. And if it's an issue of law, then we would decide whether, I think there was one thing on the net saying it was included and another thing saying it was free, and we would decide whether that amounts to a pickup at your hotel for a charge or a free pickup. I think helpful view of the record, and even the statement by State Farm, says there was no extra charge for this pickup. There was no extra charge as opposed to the $91 and the 8% and the 10%. You pay the same amount for the tour whether you get the pickup or not, but on the other hand, unless you commit yourself to the tour, you don't get picked up. Or you come to their terminal, theoretically. You can't call them and get a free ride to the terminal where you look things over and decide what to do. That is correct, once you've decided to do it. Isn't that because if with groups of eight or more, you're getting an extra $80 to cover gas, the wages of the driver, and indeed the insurance. Well, what it really says is the following hotels we include automatically. Right. And any other hotels not on the list. It's not going to charge a group of eight because we're already making $80, and that ought to be enough to pay for gas from Sylmar to Santa Monica. Well, it's included within the charge, but there's no specific payment. I'd like to, in the minute and 49 seconds I have left, I do apologize. I'd like to look over just one argument. It was challenged the question of whether it's an and or an or under 1A and B. And I think it just looked at it says A and B. And this is a question of what interpretation of the words. But if you look under B, where there's B has one, two, and then C has one, two, three and four. There they use the or. So to state that it should be that and is not a decent interpretation is incorrect because when they wanted to use or, they used or. And therefore, I submit that if one looks at the language of this exclusion, the and is the only reasonable explanation that includes all of these. It has to be rented or leased to others and used to carry persons because just on the pure use of the use and. They said, well, the period says there's no and, but if you look at the next paragraph, they use or. So they definitely know how to use the or. Last thing is I just want to say is not. The not case is cited by the judge. It is totally irrelevant because it doesn't get into the 11-580 issue at all. And the reason was very simply that was not an owner's policy governed by 11-580. And that's the reason that the not decision does not apply. I thank you very much. Thank you. Good morning, Your Honor. It's Barry Levy on behalf of State Farm. There isn't much that's been discussed this morning that really has not been addressed in Judge Morrow's opinion or in our briefs. Could you speak a little more to whether it was for free? Absolutely. And in fact, Your Honor, if I could be so bold, if you have your blue stickies, I'm ready. And let me try to guide you through at least where I think you'll find them come in handy. In the ER, start at page 249, this is the deposition of Mr. Bergen, who's the owner of Transportation Connection, and this deposition was taken by Claredon's counsel. On that page 248, you notice this is the depositions where there's four pages to a page. So I'll try to actually give you the specific page and the lines. Frankly, it was so thick I couldn't carry it all. So just read it out loud. Okay. Read the good stuff out loud. If you look at ER 248, in page 8, meaning the deposition page itself, it's in the lower right-hand corner, lines 8 to 22, basically what you have is the testimony that Transportation Connection is a charter party bus company. Then you move to page 249 of the ER and to depo page 9, lines 8 to 12, and there you find this question. What type of company is Transportation Connection, Inc.? The answer, it's a transportation company. Question, what do you transport? Answer, people. So Transportation Connection is a transportation company. It transports people. Then we go to, on that same ER page, depo page 11, and again, Mr. Bergen testifies that it's a tours and charters company. Then we get significantly to page 254 of the ER. And if you go to the depo page 29 and look at lines 14 to 19, you will see there Mr. Bergen's testimony that Katie Snyder, that was the underlying plaintiff, her payment included trip to and from Universal Studios, Universal Studios ticket, the entrance fee, and whatever fuel charges and taxes. And then on that same ER page 254, look at depo page 30, lines 4 to 7, in which he testifies that the price included the trip to and from Universal Studios. The price of the ticket includes the cost to and from Universal Studios. And then that same depo page from lines 10 to 11. I understand the critical thing is whether she paid for the trip from the hotel. And I want to, this all comes together when we go to ER page 265. And he explains that what the cost of the ticket for Universal, Universal sells it for $60. He gets a 10% break on that. So he, the company gets that ticket for $54. That's the component for the Universal ticket. And on that he testifies, and this is on ER 265 at depo page 75. And he testifies that you add on to that ticket price. He adds on to that ticket price for her the round-trip transportation and the fuel and the PUC. So his own testimony is the cost that the customer pays is a part of that is the ticket to Universal. And part of it is the transportation, the round-trip transportation. I do happen to have a case. This sort of thing is not uncommon where you have tourist destinations. You go scuba diving in Hawaii. They may give you a free trip to that bay where you go snorkeling, I guess. A free trip is a common thing at tourism places because people may not rent cars. And I would think that this must come up from time to time, whether they're just charging you for the studio tour or the snorkeling or whatever it is. And I don't happen to have noticed a case that was like this. No, I haven't seen a case in this kind of precise factual situation. But there's no question. I mean, his own testimony is that the cost that he charged Ms. Snyder, part of it was the fee for the entrance and part of it was for the round-trip transportation. That's why it's not surprising. Well, actually, he didn't charge her a cost. He charged her a price. Well, he charged me. And then after that, we're into a cost accounting exercise, right? Well, he. True? Yes, he. We have to allocate the cost to certain things, right? Right. And he says that he allocated. Stay with me here. I'm sorry. If she chose to find her own way to the terminal, would the price have been any different? No, because his business was not selling tickets to Universal. As he said, and I quoted to you already from his deposition, his business was the transportation of people. So in developing his cost, as his testimony says, I look at what I had to pay for the ticket. And on top of that, I add a factor for the round-trip transportation. And on top of that. From where to where? From the terminal to the tourist destination?  He takes them to the terminal. And then he takes them back to their hotel. And perhaps that's why it's not surprising that in Clarendon's own statement of uncontroverted facts, in paragraph 27, they say the total fee for each passenger in Ms. Snyder's party was $101. Could you get back to Judge Lawson's question? Yes. Would she have gotten something off had she said, no, no, I don't need the ride, I'm going to be shopping right across the street, I'll just walk across the street in time for my tour? No, there's absolutely nothing in this record that pointed to that. Why isn't it free then? Excuse me? Why isn't it free transportation then, rather than for a charge? Or at least complimentary. It's not. Well, because it's not complimentary. He says he put that statement in the website so that he wouldn't have disputes with people. But in his deposition, he says over and over and over again that the cost of the ticket that he sells to his customer includes the round-trip transportation. And if the customer doesn't avail him or herself, then it's a windfall to him? It might be. I mean, not that that makes a difference one way or the other, but it's the way he looks at it, in other words. I don't. There's not any suggestion in any of his deposition or affidavits or anything that there's ever a situation where his clients are not availing themselves of the transportation because, as he said, as I read from his deposition, what his company does, it provides transportation. We get that part. Yeah. But I guess the question then is, are we required to look at things from his point of view, or should we look at it from the point of view of the public or the customer? If the customer says it's complimentary and they're not going to charge me anything more, I might as well go ahead and take the van rather than find my way over there. The customer looks like it's a free ride. But if he says, well, I'm counting on the fact that everybody's going to take advantage of that, so I'm going to account for it in my cost and therefore price it accordingly, then it's not a free ride. So I guess it depends on from whose view you look at it, right? I don't think necessarily so, Your Honor, because what you look at is, was there a charge for carrying this passenger? Yeah. And the fact is, based on in this particular situation with this party, with the Snyder party, there was absolutely a charge for the round-trip transportation. And he admits there was a charge. Why is there absolutely a charge when they don't pay more for getting the ride and they don't pay less if they forego the ride? I mean, they could very well have had a couple of renter cars and say, no, no, no, we don't want you to pick us up at the hotel. We don't want to be standing around waiting. We'll just get in our car and drive down a transportation connection. You have parking there? Yeah. So if they don't pay more for getting the ride and they don't pay less if they don't get the ride, why is there a charge? You're saying that somebody would go to this company and pay $101 to get a $60 ticket to Universal? Look, I drop off my car at the place that services my car, and usually they give me a ride to work if I do it on a weekday morning. And they tell me, we'll give you a ride back. And I say, no, I'll get somebody in the office to give me a ride back. That way I have more control and I'm not standing around waiting for them. I don't pay for the ride and they don't subtract anything from the ride. Why isn't it a free ride? Why are they carrying me for hire when they do that? Your hypothetical has to do with an insurance risk. If they're making money by driving people around, the insurance company has two additional risks. One is there's more of an incentive to carry people around, and the other is they've got common carrier liability. In your hypothetical, that might be a free ride because what they're charging that person for or charging you for in your hypothetical was for the service to your car. Why isn't it a free ride here just like the car dealer? They're selling you here the transportation that they're providing you. That's what their business is. He says, my business is to transport people. The transportation on the bus starts at the terminal, there's a tour, and then they end up at Universal Studios, right? No. They pick them up at their hotel. They bring them to the terminal where they pay. Then they take them to Universal and here they took them back to their hotel. Okay. All right, fine. Let's say somebody comes from the hotel, gets to the terminal, changes their mind before they pay. Do they get back to the hotel? I don't know. It's not in this record. There's nothing about that in this record. But also when you talk about is there a charge, remember on top of everything else, they added on to this ticket price the PUC and the fuel charges. And these people paid that. And they didn't just charge them the PUC, the 8%. They added another 2%. Another way you could say the same thing is that they calculate their overall price to cover the overhead of giving free rides. No, I would say they calculate their cost that they sell their service to their customer to cover what their business is, which is the transportation. And that is charging for transportation. But they represent to the public that it's free and their explanation is that it's really not free because we just don't want to have to put up with the customer complaints. You may have a truth in advertising problem. Is that covered under the policy? Let me ask you a question. I get your argument on this. I have a slightly different question. Isn't Coachways also a transportation company? Coachways arranges for tours for people. They contract. This record is not about them. Well, why would they buy a policy? I don't know if this makes any difference or not. Why would they buy a policy for a van that's going to be used to carry people that says there's no coverage when it's being used for hire? Because there's no evidence. That van wasn't used to transport people for Coachways. There's no evidence of that. It was just used in the business for other purposes? Used in the business for all we know. I'm wondering, so we have no idea how Coachways makes a living? Well, I think the record shows Coachways arranges. I saw those words, and I didn't know what they meant. They make arrangements that people from another country, for example, want to get a tour when they come here. But that wasn't this case. They didn't make that arrangement. I understood that, but I didn't know what it meant. Here's my question, though. I get kind of confused. On the one hand, from the seller's point of view, he's charging enough money to cover the free rides, so they're not really free. On the other hand, from the buyer's point of view, they don't pay extra for the ride from the hotel, and they don't get anything off the price if they forego the ride from the hotel. So from the passenger's point of view, it is free. The policy can be reasonably interpreted to mean that either it's a free ride or it's a ride for hire in that in-between factual circumstance. So why don't you use the doctrine of construing a policy contra pro forentum to resolve ambiguities and resolve it against the insurance company that wrote the policy? A, I disagree with the premise that the way you worded it. Tell me each of the things where the way I laid it out is mistaken. Well, that the transportation is for free. It's not for free. It's paid. The record here establishes, Mr. Bergen's own testimony is, he charges for the transportation. He adds the round-trip transportation into the cost he charges his client. So the theme of this case is there's no such thing as a free ride. That's right. Not when you're a transportation business, because if you were giving free rides, you wouldn't be in business. And, you know, why would Mr. Bergen have a $5 million limit policy to cover his transporting people? That's Clarendon policy. Coachways had a state farm policy as a $250,000 limit policy. Thank you, counsel. Thank you. You had a few seconds. Only 29. I thought I heard 33. I saw that. Okay, I'll speak even quicker. Okay. The distinction Mr. Levy fails to make is there are two transportations here. And I think, Your Honor, Judge Lawson recognized that. There's a transportation from the terminal. And, yes, there is a transportation that's being paid for. The complementary part was not. That's correct. If they were going to go to Universal, they'd only buy the ticket at Universal. The complementary part is only from the terminal. The court asked if there's any other cases that address this. And there are a couple of out-of-state cases. Specifically, they're cited on page 24 and 25 of the appellate brief, where specifically daycare provided transportation, plus we take care of your kids. And there was a car picking up the kids. And this exact disclusion in the court said, no, that's complementary pickup. Yes, is it included in the price of the daycare? Clearly. And those sites are CSC versus Graves 293, New Jersey, Super 244, and Progressive Gulf Insurance versus We Daycare 953, Southern Second 250. So they do recognize that there is an issue there where you can get complementary transportation. Of course it's included in the price. Finally, can I give one last statement? I appreciate it. Thank you. Coachways, and we specifically raised this argument in our brief and before the lower court, Coachways used this vehicle to transport its customers from the airport, foreign customers for tours from the airport. And therefore, as we said, this policy would be a worthless policy because this was their business. And, yes, it was not a specific price for it. They would pick these people up at the airport, take them out, show them around to get them to do tours, and Coachway organized tours, and that is in the record. I thank this court very much. Thank you both. Thank you, counsel. Thank you. The filing of the national is submitted and will return for the day. All rise. The court is now adjourned. Thank you. We shall say restart.
judges: Lawson, Kleinfeld, Tallman